Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEO GOLDSTEIN,<br><br>    Plaintiff,<br><br>      v.<br><br>THE EXONE COMPANY, S. KENT ROCKWELL, JOHN HARTNER, JOHN IRVIN, GREGORY F. PASHKE, WILLIAM F. STROME, ROGER W. THILTGEN, BONNIE K. WACHTEL, and PAUL A. CAMUTI,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Leo Goldstein ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against The ExOne Company ("ExOne" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of ExOne by Desktop Metal, Inc. ("Desktop Metal").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.[1]

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff is, and has been at all relevant times hereto, an owner of ExOne common stock.

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

7.     Defendant ExOne develops, manufactures, and markets three-dimensional (3D) printing machines, 3D printed and other products, materials, and services to industrial customers in the United States, Germany, and Japan. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "XONE."

8.     Defendant S. Kent Rockwell ("Rockwell") is Chairman of the Board of the Company.

9.     Defendant John Hartner ("Hartner") is Chief Executive Officer and a director of the Company.

10.     Defendant John Irvin ("Irvin") is a director of the Company.

11.     Defendant Gregory F. Pashke ("Pashke") is a director of the Company.

12.     Defendant William F. Strome ("Strome") is a director of the Company.

13.     Defendant Roger W. Thiltgen ("Thiltgen") is a director of the Company.

14.     Defendant Bonnie K. Wachtel ("Wachtel") is a director of the Company.

15.     Defendant Paul A. Camuti ("Camuti") is a director of the Company.

16.     Defendants Rockwell, Hartner, Irvin, Pashke, Strome, Thiltgen, Wachtel, and Camuti are collectively referred to herein as the "Individual Defendants."

17.     Defendants ExOne and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

18.     On August 11, 2021, ExOne and Desktop Metal announced that they had entered into a definitive agreement pursuant to which Desktop Metal would acquire all of the issued and outstanding shares of ExOne common stock. Under the terms of the agreement, ExOne

shareholders will receive $8.50 in cash and $17.00 in shares of Desktop Metal common stock for each share of ExOne common stock. The press release announcing the Proposed Transaction states, in pertinent part:

### Desktop Metal to Acquire ExOne, Cementing Its Leadership in Additive Manufacturing for Mass Production

***Acquisition Joins Two Additive Manufacturing Pioneers and Complementary Technology Platforms to Further Accelerate the Adoption of Additive Manufacturing 2.0***

August 11, 2021 04:20 PM Eastern Daylight Time

BOSTON & NORTH HUNTINGDON, Pa.--(BUSINESS WIRE)--Desktop Metal, Inc. (NYSE: DM) ("Desktop Metal") and The ExOne Company (NASDAQ: XONE) ("ExOne") announced today they have entered into a definitive agreement pursuant to which Desktop Metal will acquire all of the issued and outstanding shares of ExOne common stock. Under the terms of the agreement, ExOne shareholders will receive $8.50 in cash and $17.00 in shares of Desktop Metal common stock for each share of ExOne common stock, for a total consideration of $25.50 per share, representing a transaction value of $575 million, subject to a collar mechanism as described below and implying a 47.6% premium to the closing price of ExOne's common stock on August 11, 2021 and a 43.9% premium based on the 30-day average closing price of ExOne common stock. The transaction value also implies an acquisition multiple of 6.4x 2021 consensus revenue estimates for ExOne.

\*     \*     \*

**Transaction Details:**

Under the terms of the agreement, at closing, ExOne stockholders will receive total consideration of $575 million, consisting of $192 million in cash consideration and $383 million in share consideration of Desktop Metal common stock, subject to a collar mechanism on the share consideration component described below.

The share consideration component is subject to an exchange ratio adjustment if Desktop Metal's 20-day volume weighted average price (VWAP) 3 days prior to closing is between $7.94 and $9.70. If the 20-day VWAP exceeds the higher end of that range, the exchange ratio will be fixed at 1.7522 per share, and if the 20-day VWAP goes below the lower end of that range, the exchange ratio will be fixed at 2.1416 per share. The final number of Desktop Metal shares estimated to be issued on a fully diluted basis will range between approximately 39.5 million and 48.3 million shares at closing. Upon closing of the transaction, current Desktop Metal

shareholders will own between 85 and 88% and current ExOne shareholders are expected to own between 12 and 15% of the combined company, respectively.

Kent Rockwell, ExOne's Chairman of the Board of Directors and largest shareholder, has entered into a Support Agreement in which he will vote his 4.2 million shares in favor of the transaction.

The transaction, which has been unanimously approved by the Board of Directors of ExOne, is expected to close in the fourth quarter of 2021, subject to the approval of ExOne shareholders and satisfaction of customary closing conditions, including applicable regulatory approvals.

Credit Suisse Securities (USA) LLC is acting as exclusive financial advisor and Latham & Watkins is acting as legal advisor to Desktop Metal. Stifel is acting as exclusive financial advisor and McGuireWoods LLP is acting as legal advisor to ExOne.

*     *     *

**About Desktop Metal:**

Desktop Metal, Inc., based in Burlington, Massachusetts, is accelerating the transformation of manufacturing with an expansive portfolio of 3D printing solutions, from rapid prototyping to mass production. Founded in 2015 by leaders in advanced manufacturing, metallurgy, and robotics, the company is addressing the unmet challenges of speed, cost, and quality to make additive manufacturing an essential tool for engineers and manufacturers around the world. Desktop Metal was selected as one of the world's 30 most promising Technology Pioneers by the World Economic Forum and named to MIT Technology Review's list of 50 Smartest Companies.

For more information, visit www.desktopmetal.com.

**About ExOne:**

ExOne is the pioneer and global leader in binder jet 3D printing technology. Since 1995, we've been on a mission to deliver powerful 3D printers that solve our customers' toughest problems and enable world-changing innovations. Our 3D printing systems quickly transform powder materials — including metals, ceramics, composites and sand — into precision parts, metalcasting molds and cores, and innovative tooling solutions. Industrial customers use our technology to save time and money, reduce waste, increase their manufacturing flexibility, and deliver designs and products that were once impossible. As home to the world's leading team of binder jetting experts, ExOne also provides specialized 3D printing services, including on-demand production of mission-critical parts, as well as

engineering and design consulting. Learn more about ExOne at www.exone.com or on Twitter at @ExOneCo.

19.     On September 15, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

20.     The Registration Statement, which recommends that ExOne shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) ExOne's and Desktop Metal's financial projections; (ii) the financial analyses performed by ExOne's financial advisor, Stifel Nicolaus & Company, Incorporated ("Stifel"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Stifel; and (iv) the sales process leading up to the Proposed Transaction.

21.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Mergers; (ii) ExOne's Reasons for the Mergers; Recommendation of the ExOne Board; (iii) Opinion of ExOne's Financial Advisor; (iv) Prospective Financial Information of ExOne; and (v) Prospective Financial Information of Desktop Metal.

22.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, ExOne shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

    **1.** **Material Omissions Concerning ExOne's and Desktop Metal's Financial Projections**

23.    The Registration Statement omits material information concerning ExOne's and Desktop Metal's financial projections.

24.    With respect to the financial projections of ExOne and Desktop Metal, the Registration Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Gross Profit, and (iii) Adjusted EBITDA; (2) ExOne's and Desktop Metal's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25.    The Registration Statement provides that, in connection with its fairness opinion, Stifel "held discussions with ExOne's management, regarding estimates of certain cost savings, operating synergies, merger charges and the pro forma financial impact of the Mergers on ExOne [.]"

26.    Yet the Registration Statement fails to disclose the amount and timing of the synergies anticipated by ExOne's management to result from the Proposed Transaction, and the pro forma financial impact of the Proposed Transaction on ExOne.

27.    The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

29.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.     Material Omissions Concerning Stifel's Analyses

30.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Stifel.

31.     The Registration Statement fails to disclose the following concerning Stifel's "*Selected Precedent Transactions Analysis*": (1) the closing date of each transaction; and (2) the value of each transaction.

32.     The Registration Statement fails to disclose the following concerning Stifel's "*Discounted Cash Flow Analysis*" of ExOne: (1) the Company's projected unlevered free cash

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Sept. 27, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

flows and all underlying line items; (2) the terminal value of the Company's projected cash flows; and (3) the individual inputs and assumptions underlying the (i) range of exit multiples ranging from 3.0x to 5.0x, (ii) discount rates of 11.5% — 13.5%, and (iii) small-cap size premium of 2.2%.

33.    With respect to Stifel's "*Premiums Paid Analysis*," the Registration Statement fails to disclose each transaction and the individual premiums paid therein.

34.    The Registration Statement fails to disclose the following concerning Stifel's "*Research Price Targets*" analysis of ExOne common stock: (1) the individual price targets observed by Stifel in its analysis; and (2) the sources thereof.

35.    The Registration Statement fails to disclose the following concerning Stifel's "*Discounted Cash Flow Analysis*" of Desktop Metal: (1) Desktop Metal's projected unlevered free cash flows and all underlying line items; (2) the terminal value of Desktop Metal's projected cash flows; and (3) the individual inputs and assumptions underlying the (i) range of exit multiples ranging from 4.0x to 6.0x, and (ii) discount rates of 11.5% — 17.5%.

36.    The Registration Statement fails to disclose the following concerning Stifel's "*Research Price Targets*" analysis of Desktop Metal common stock: (1) the individual price targets observed by Stifel in its analysis; and (2) the sources thereof.

37.    The Registration Statement fails to disclose the following concerning Stifel's "*Pro Forma Combined Company Discounted Cash Flow Analysis*": (1) the cost synergies provided by ExOne's management; (2) the projected unlevered free cash flows for the pro forma combined company and all underlying line items; (3) the terminal values of the pro forma combined company; (4) the individual inputs and assumptions underlying the (i) discount rates ranging from 11.5% to 17.5%, and (ii) multiples ranging from 4.0x to 6.0x; (5) the pro forma combined net debt of the combined company; (6) ExOne's net debt; (7) Desktop Metal's net debt; and (8) the pro

forma fully diluted share count of the combined company.

38.     The valuation methods, underlying assumptions, and key inputs used by Stifel in rendering its purported fairness opinion must be fairly disclosed to ExOne shareholders. The description of Stifel's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, ExOne shareholders are unable to fully understand Stifel's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3.     Material Omissions Concerning Potential Conflicts of Interest Involving Stifel**

39.     The Registration Statement omits material information concerning potential conflicts of interest involving Stifel.

40.     The Registration Statement fails to disclose the timing and nature of ***all*** the past services Stifel and/or its affiliates provided ExOne, Desktop Metal, and/or their affiliates, including the amount of compensation Stifel received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

41.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

42.     The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.   Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

43.     The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

44.     The Registration Statement provides that, "[o]n June 4, 2021, Company X entered into a non-disclosure agreement with ExOne."

45.     The Registration Statement, however, fails to disclose the terms of the Company's non-disclosure agreement with Company X, including whether such agreement contained a standstill provision with a "don't ask, don't waive" (DADW) provision (including its time of enforcement) that would preclude Company X from making a superior offer for the Company.

46.     Without this information, ExOne shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable ExOne shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

47.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully

set forth herein.

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

51. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

55.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

58.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including

counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 27, 2021                           Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
             zhalper@halpersadeh.com

*Counsel for Plaintiff*